KILPATRICK TOWNSEND & STOCKTON LLP
JON MICHAELSON (SBN 83815)
JMichaelson@kilpatricktownsend.com
SCOTT E. KOLASSA (SBN 294732)
SKolassa@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA  94025
Telephone:   650 326 2400
Facsimile:    650 326 2422

Attorneys for Defendant
KINETIC TECHNOLOGIES INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SKYWORKS SOLUTIONS, INC., | Civil Action No. CV 14-00010 SI |
| Plaintiff, | **DEFENDANT KINETIC TECHNOLOGIES INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| KINETIC TECHNOLOGIES INC., | |
| Defendant. | |

Date:      November 7, 2014
Time:      9:00 a.m.
Ctrm.:     10
Judge:    Hon. Susan Illston

66504908V.1

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on November 7, 2014 at 9:00 a.m. in the courtroom of the

3  Honorable Susan Illston, Courtroom 10, 19th Floor, U.S. Courthouse, 450 Golden Gate Avenue,

4  San Francisco, California, defendant Kinetic Technologies Inc. ("Kinetic USA"), will and hereby

5  does move the Court for a grant of summary judgment of noninfringement.

6      This motion for summary judgment is brought pursuant to Federal Rule of Civil Procedure

7  56(a). There is no genuine dispute of material fact, and Kinetic USA is entitled to a judgment of

8  noninfringement as a matter of law because it does not make, use, offer to sell, or sell any patented

9  invention in the United States.  Kinetic USA is also entitled to judgment as a matter of law with

10 respect to claims of indirect infringement, as it neither contributes to nor induces infringement in

11 the United States.

12      In support of this Motion Kinetic USA hereby incorporates the attached Memorandum of

13 Points and Authorities, the Declaration of Kin Shum, and any arguments or authorities that may be

14 presented at a hearing on this Motion.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16 **I.      INTRODUCTION**

17      Defendant Kinetic Technologies, Inc. ("Kinetic USA") has not made, used, offered for

18 sale, or sold the accused products anywhere in the world, including in the United States. The

19 undisputed facts also show that Kinetic USA has not encouraged others to infringe the patents-in-

20 suit.  Indeed, prior to litigation arising it did not even know these patents existed.  Summary

21 judgment as to claims of both direct and indirect infringement should issue as a result.

22 **II.     SUMMARY JUDGMENT STANDARD**

23      "The court shall grant summary judgment if the movant shows that there is no genuine

24 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

25 Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  As the moving party,

26 Kinetic USA has "the burden of showing the absence of a genuine issue as to any material fact,"

27 and the evidence "must be viewed in the light most favorable to the opposing party," Plaintiff

28 Skyworks Solutions, Inc. ("Skyworks").  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

1    Kinetic USA may meet this burden by pointing out an absence of evidence to support the

2    plaintiff's case.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 325.  "The burden is always on the

3    patentee to show infringement."  *Under Sea Ind., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed.

4    Cir. 1987).

5    **III.    FACTUAL BACKGROUND**

6        **A.    Parties**

7        Defendant Kinetic USA was founded in 2007.  The company is headquartered and

8    maintains its only facility in Sunnyvale, California.  Kinetic USA performs research and

9    marketing activities in this country, but does not make, offer for sale, or sell anything anywhere.

10       The founder of Kinetic USA is Kin Shum.  Prior to starting Kinetic USA, from December

11   2003 until May 2006, Mr. Shum was employed by Advanced Analogic Technologies, Inc.

12   ("AATI"), an analog semiconductor company.  The patents-in-suit originated with AATI.

13       Kinetic USA is a wholly owned subsidiary of Kinetic Technologies, a Cayman Islands

14   Corporation ("Kinetic Cayman").  Parent company Kinetic Cayman owns several other

15   subsidiaries.  Among these is Kinetic Technologies Holdings BVI ("Kinetic BVI").  Kinetic BVI

16   contracts with third party manufacturers in Asia to make the items in its product line, including

17   those devices that are now alleged to infringe the patents-in-suit.  A wholly owned subsidiary of

18   Kinetic BVI – Kinetic Technologies Hong Kong (Kinetic HK) – sells the product line, again

19   including items which are accused in this lawsuit.  Neither Kinetic BVI nor Kinetic HK has any

20   presence or undertakes any activity in the United States.

21       Plaintiff Skyworks, a publicly held corporation based in Woburn, Massachusetts,

22   manufactures analog semiconductors, as well as a variety of other products, which it sells

23   worldwide.  Skyworks acquired AATI in January 2012.  Through this acquisition, Skyworks

24   acquired the rights it now asserts under the patents-in-suit.

25       **B.    The Patents-in-Suit and the Accused Products**

26       In May 2002, Skyworks' predecessor AATI filed an application for what issued in October

27   2006 as U.S. Patent No. 7,127,631 (the '631 patent).  The two patents-in-suit are continuations of

28   this '631 parent.  The application for what became U.S. Patent No. 7,921,320 (the '320 patent)

was filed in October 2006, and the patent issued in April 2011.  The application for what became

U.S. Patent No. 8,539,275 (the '275 patent) was filed in February 2011, and the patent issued in

September 2013.

The '631, '320, and '275 patents all relate to integrated circuits ("ICs") commonly known

as "LED drivers."  An LED driver controls the intensity (brightness) of light emitting diodes

(LEDs) used to provide backlighting in a cell phone.

Skyworks accuses a number of the LED drivers manufactured for Kinetic BVI and sold by

Kinetic HK of infringement.[1]  These integrated circuits are sold by Kinetic HK in Asia to various

cell phone manufacturers also located in Asia.  The manufacturers in turn incorporate the

component into their cell phones.  Generally, a single LED driver chip is used in each cell phone.

The phone manufactures decide themselves where their units will be sold.

Kinetic USA has no involvement in any part of this process – not in the manufacture of the

LED driver, not in the offer for sale or sale of the component, not in the incorporation of ICs into

the cell phones, and not in determining where particular phones will be sold.  Kinetic USA also

does not know in advance where cell phone units containing accused LED drivers will be

distributed.  Kinetic USA does not service or support accused ICs which have been incorporated

into cell phones which a third party phone manufacturer may happen to sell in the United States.

**C.    Litigation Proceedings**

Skyworks filed an infringement action based on the '320 patent against Kinetic USA and

its sister company Kinetic HK on March 20, 2013, in the U.S. District Court for the District of

Massachusetts.  Kinetic USA moved to dismiss the action for lack of personal jurisdiction,

arguing, among other things, that it undertook no infringing activity in the United States because it

did not and does not make, sell, offer to sell, use, or import the accused products in this country.

In September 2013, while this motion was pending, Skyworks sought to amend its complaint to

add the '275 patent.

---

[1] Kinetic USA denies that ICs made for Kinetic BVI and sold by Kinetic HK infringe because they do not meet the
limitations of any properly-construed asserted claim of the '320 or '275 patent.  However, the Court does not need to
reach that question at this time.  Kinetic USA asserts here that it does not infringe simply because nothing which it
does falls within the ambit of U.S. patent law.

1     On December 30, 2013, the District of Massachusetts dismissed Kinetic USA for lack of

2  personal jurisdiction.  Shortly thereafter, Skyworks served Kinetic HK in Hong Kong.  Kinetic HK

3  then moved to dismiss the action for lack of jurisdiction (in that it has no presence and undertakes

4  no activity in this country).  That motion is pending.

5     Skyworks initiated the instant case in this Court, alleging infringement of the '320 and

6  '275 patents, on January 2, 2014, three days after the Massachusetts court dismissed Kinetic USA

7  in the earlier-filed action.[2]

8     **D.     Undisputed Facts**

9     The following facts are not fairly in dispute and fully support the request by Kinetic USA

10  for summary judgment in its favor:

11  • Kinetic USA does not manufacture, sell, offer for sale, or use any accused product in the

12     United States. Declaration of Kin Shum at ¶¶ 3-6.

13  • Kinetic USA does not import into this country any device (e.g., cell phone) which contains

14     an accused product and does not service or support in the United States any device which

15     contains an accused product.  *Id.* at ¶¶ 7, 9.

16  • Kinetic USA first learned of the '320 patent in March 2013, when Skyworks served its

17     complaint in the Massachusetts litigation.  *Id.* at ¶ 10.

18  • Kinetic USA first learned of the '275 patent in September 2013, when Skyworks attempted

19     to amend its complaint in the Massachusetts litigation. *Id.* at ¶ 11.

20  **IV.   KINETIC DOES NOT DIRECTLY INFRINGE, AS IT PERFORMS NO**
21  **POTENTIALLY INFRINGING ACTS WITHIN THE UNITED STATES.**

22     The United States patent law states that "whoever without authority makes, uses, offers to

23  sell, or sells any patented invention, within the United States or imports into the United States any

24  patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

---

25  [2]  As the Court is aware, the Massachusetts case and the matter at hand are not the only proceedings between the
    parties.  In 2008, Skyworks' predecessor AATI sued in state court for misappropriation of trade secrets and related
26  claims.  Kinetic USA and its founder Mr. Shum prevailed in that action.  In 2009, AATI sued Kinetic USA in this
    Court for infringement of the '631 parent patent.  That prompted *inter partes* review of the '631 patent, which AATI
27  (now Skyworks ) lost and has appealed within the U.S. Patent and Trademark Office.  Skyworks has initiated
    infringement actions against Kinetic entities (including Kinetic USA) in China and in Korea, both of which are
28  pending.  And most recently, Kinetic USA filed petitions for *inter partes* review of the patents-in-suit with the
    USPTO.  The Office should decide whether to grant those petitions by September or October of this year.

This statute applies only to actions taken within the United States, and does not forbid extraterritorial acts.  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.  The traditional understanding that our patent law operates only domestically and does not extend to foreign activities, is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States.") (internal citations omitted); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972) ("The statute makes it clear that it is not an infringement to make or use a patented product outside of the United States."); *International Rectifier Corp. v. Samsung Electronics Co., Ltd.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004) ("express language of § 271(a) does not apply to "conduct outside the United States").

More specifically, the "U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations v. Fairchild Semiconductor Int'l, Inc*., 711 F.3d 1348, 1372 (Fed. Cir. 2013).  And because the Patent Act "allow[s] specifically 'damages adequate to compensate *for the infringement*,'" it does not encompass "compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Id.* (quoting 35 U.S.C. § 284, original emphasis).

Kinetic USA does not make, use, offer to sell, or sell the accused products within the United States or import items containing the accused products into this country.  Indeed, it does not make, use, offer to sell, or sell the accused products *anywhere*.  As a result, regardless of the merits of Skyworks' claim that the accused products meet the limitations of the asserted claims, Kinetic USA has performed no act that even qualifies for *consideration* as direct infringement.[3]  Consistent with well-established limitations on the reach of U.S. patent law, summary judgment in favor of Kinetic USA should be granted.

---

[3] Skyworks is not left without recourse.  As the Supreme Court recognized in *Microsoft v. AT&T*, it can assert foreign patent rights:  "foreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries [and thus,] [i]f [a patentee] desires to prevent copying in foreign countries, its remedy lies in obtaining and enforcing foreign patents."  550 U.S. at 439.  That is, of course, what Skyworks has done in Korea and China.

**V.     KINETIC USA DOES NOT INDIRECTLY INFRINGE, AS IT NEITHER INDUCES NOR CONTRIBUTES TO DIRECT INFRINGEMENT BY ANOTHER.**

**A.     Kinetic USA Does Not Induce Infringement, As It Did Not Have Requisite Knowledge of the Patents-In-Suit and Did Not Intend to Cause Infringement.**

35 U.S.C. section 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." The provision includes both a knowledge requirement and an intent requirement. *See C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) ("A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement."); *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002) ("In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.").

1.     *Kinetic USA Had No Knowledge of the Patents-in-Suit Prior to Litigation.*

The Federal Circuit has held that "a person infringes by actively and knowingly aiding and abetting another's direct infringement. Although section 271(b) does not use the word 'knowing,' the case law and legislative history uniformly assert such a requirement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). More specifically, knowledge of the **patent** that is allegedly infringed is necessary. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) ("[W]e proceed on the premise that § 271(c) requires knowledge of the existence of the patent that is infringed. Based on this premise, it follows that the same knowledge is needed for induced infringement under § 271(b).").

In its complaint in the matter at hand, Skyworks alleges that "as of its founding, Kinetic was aware of the existence of the parent application that led to the '320 patent . . . [and] the parent application that led to the '275 patent." (Dkt. No. 20, at ¶¶ 38, 49). The factual viability of this vague assertion is doubtful at best. If this statement references the May 2002 application which led to issuance of the '631 patent in October 2009, Kinetic USA's sole founder Mr. Shum was not employed by predecessor AATI in either May 2002 or October 2009. If the allegation

KINETIC'S MOTION FOR SUMMARY JUDGMENT - CASE NO. CV 14-00010-SI      - 6 -

1  encompasses the October 2006 application which led to issuance of the '320 patent, again there is

2  (and can be) no indication as to how Mr. Shum would have had such knowledge, given that he

3  was no longer at AATI at that time.  And with respect to the February 2011 application which

4  resulted in the '275 patent, the contention is even more far-fetched, as Kinetic USA was founded

5  in 2007 and thus could not have known at inception of an event which did not take place until

6  years later.

7         But even assuming that Kinetic USA *did* know about these applications at the time of its

8  founding or later, that is not sufficient to demonstrate knowledge of the subsequently issued

9  patents.  Awareness of an application which eventually leads to an allegedly infringed patent does

10 not demonstrate knowledge of the patent itself.  *McRee v. Goldman*, 2012 WL 3745190, at *3

11 (N.D. Cal. 2012) ("D. Goldman's mere knowledge of a pending patent application in 1994 does

12 not give rise to liability for inducement under § 271(b)."); *Vasudevan Software, Inc. v. TIBCO*

13 *Software Inc.*, 2012 WL 1831543, at *6 (N.D. Cal. 2012) (discussing willful blindness and noting

14 that "mere knowledge of a pending patent application is of little significance given the prospect

15 that a patent may not ever be issued, or, if issued, be altered or narrowed in scope."); *Young*

16 *Dental Mfg. Co. v. Q3 Special Products, Inc.*, 891 F. Supp. 1345, 1348 (E.D. Mo. 1995) ("'mere

17 knowledge that an application for a patent is pending is not sufficient to constitute the knowing

18 and intentional inducement required for a violation of section 271(b).'  Young Dental has provided

19 no evidence showing that Carron knew that a patent would issue and that plaintiff's patent claims

20 would cover Q3's DPA . . . .  Plaintiff offers nothing to dispute the fact that Carron did not know

21 of the issuance of the patent until he was notified of this fact by Young Dental's attorneys.")

22 (citation omitted).

23        In light of these and similar authorities, there is no evidence that Kinetic USA possessed

24 sufficient knowledge to substantiate a claim for inducement under Section 271(b).  Summary

25 judgment should be granted accordingly.

26              2.    *Kinetic USA Did Not Possess Sufficient Intent to Induce Infringement.*

27        To "actively" induce infringement under Section 271(b), the alleged infringer must

28 affirmatively intend to cause infringement.  This specific intent requirement extends beyond mere

1    awareness of what the alleged direct infringer is doing.  *Manville Sales Corp. v. Paramount*

2    *Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("[i]t must be established that the defendant

3    possessed specific intent to encourage another's infringement and not merely that the defendant

4    had knowledge of the acts alleged to constitute inducement").  Indeed, even intent to cause the

5    allegedly infringing actions is insufficient:  the alleged inducer must actually intend that these

6    actions constitute infringement.  *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed.

7    Cir. 2006) ("the intent requirement for inducement requires more than just intent to cause the acts

8    that produce direct infringement.  Beyond that threshold knowledge, the inducer must have an

9    affirmative intent to cause direct infringement . . . .  Accordingly, inducement requires evidence of

10   culpable conduct, directed to encouraging another's infringement, not merely that the inducer had

11   knowledge of the direct infringer's activities."); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331–

12   32 (Fed. Cir. 2010) ("To establish inducement, a patent owner must show that the accused

13   infringer induced the infringing acts and knew or should have known that its actions would induce

14   actual infringement. It is not enough to simply intend to induce the infringing acts.") (citation

15   omitted).

16        Here, there is no evidence that Kinetic USA intended the accused LED drivers to be used

17   in an infringing manner.  Kinetic USA does not manufacture, offer to sell, demonstrate, or sell

18   these items in the United States.  It does not import cell phones which contain its ICs, and does not

19   service any such items which others might bring into this country.  Nor does it have any

20   involvement in or information regarding purchaser decisions as to which particular models of cell

21   phones (those which might contain accused chips versus those which did not) will be distributed in

22   the United States.  And there is no evidence that Kinetic USA encouraged any phone manufacturer

23   which purchased accused chips to sell its phones here.

24        Under these circumstances, applicable case law demonstrates that a claim of induced

25   infringement cannot be maintained.  Unlike the defendant in *MEMC Elec. Materials, Inc. v.*

26   *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005) (refusing to grant summary

27   judgment of no induced infringement where defendant provided "substantial technical support" to

28   Samsung Austin, despite selling directly to Samsung Japan), for example, Kinetic USA has no

1   offending contact in this country with any cell phone vendor.  And it provides no support or

2   customer service for accused LED drivers found in the United States.

3        Skyworks also cannot demonstrate the intent necessary to sustain a claim of induced

4   infringement by virtue of the nature of the accused products.  The LED drivers at issue in this case

5   are not specially designed for importation into or use in the United States, as were the products at

6   issue in *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 607 F. Supp. 2d 470 (S.D.N.Y. 2009)

7   (refusing to overturn, on the basis of insufficient intent, a jury finding of inducement where

8   defendant's lamps were marked with the English "Made in Japan" and the symbol "Hg" to show

9   mercury content, in order to conform with US import requirements).  Moreover, there is nothing

10  inherent in a backlighting component of a cell phone which could possibly evidence an intent to

11  enter one particular market as opposed to another.  Accordingly, there is no evidence that Kinetic

12  USA had the intent to induce infringement necessary to establish liability under Section 271(b).

13      **B.     Kinetic USA Has Not Contributed to Infringement Because It Has Made No
14              Sales or Offers for Sale in the United States and Did Not Have Knowledge of
               the Patents-In-Suit.**

15      35 U.S.C. section 271(c) states that "[w]hoever offers to sell or sells within the United

16  States or imports into the United States a component of a patented machine, manufacture,

17  combination or composition, or a material or apparatus for use in practicing a patented process,

18  constituting a material part of the invention, knowing the same to be especially made or especially

19  adapted for use in an infringement of such patent, and not a staple article or commodity of

20  commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

21  Any act alleged to contribute to infringement *must* occur *within* the United States.  *DSU Medical*

22  *Corp. v. JMS Co., Ltd.*, *supra, 471* F.3d at 1304 (Fed. Cir. 2006) ("Section 271(c) has a territorial

23  limitation requiring contributory acts to occur in the United States.").

24      While not requiring the identical showing of intent as a charge of induced infringement,

25  contributory infringement does encompass the same knowledge element.  As the Supreme Court

26  has stated, "… § 271(c) does require a showing that the alleged contributory infringer knew that

27  the combination for which his component was especially designed was both patented and

28  infringing."  *Aro Mfg. Co. v. Convertible Top Replacement Co., supra*, 377 U.S. at 488.

1    Again, Kinetic USA does not sell or offer to sell anything, anywhere.  Therefore, as a

2  preliminary matter, it has not sold or offered to sell in the United States any component of a

3  patented device.  Kinetic USA also does not import any such item into the United States.  It

4  therefore does not meet the statutory requirements for contributory liability.

5    Furthermore, even if Kinetic USA *did* engage in one of these activities within the United

6  States, as discussed above it did not possess sufficient pre-litigation knowledge to be held liable

7  with respect to inducement.  Without that knowledge, it also cannot be held liable for contributory

8  infringement.  For this reason as well, Kinetic USA is entitled to summary judgment that it is not a

9  contributory infringer.

10  **VI.    CONCLUSION**

11    Kinetic USA does not make, use, offer for sale, or sell in the United States any of the

12  products Skyworks has alleged are infringing. Furthermore, it had no knowledge of the patents-in-

13  suit, does not encourage or support third party use of the accused devices in the United States, and

14  does not sell, offer for sale, or import any component of a patented item in this country.  The

15  motion for summary judgment should be granted.

16

17  DATED:  August 21, 2014            Respectfully submitted,

18                                     KILPATRICK TOWNSEND & STOCKTON LLP

19

20                                     By: */s/ Jon Michaelson*
                                           JON MICHAELSON
21

22                                     Attorneys for Defendant
                                       Kinetic Technologies Inc.

23

24

25

26

27

28