UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SKYWORKS SOLUTIONS, INC.,
    Plaintiff,

v.

KINETIC TECHNOLOGIES, INC.,
    Defendant.

Case No. 14-cv-00010-SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Currently before the Court is defendant Kinetic Technologies, Inc.'s motion for summary judgment. Docket No. 51. This matter came on for hearing on December 2, 2014 at which time the Court ordered supplemental briefing. Docket No. 73. Having considered the arguments of the parties and the original and supplemental papers submitted, and for good cause shown, the Court hereby GRANTS defendant's motion.

## BACKGROUND

Plaintiff Skyworks is a Delaware corporation and an innovator in the field of high performance analog semiconductors. First Amended Complaint ("FAC") ¶ 8. Defendant Kinetic Technologies Inc. (Kinetic USA) is a California corporation which designs, develops, and markets semiconductor products, including LED driver products for use in devices such as wireless communication devices.[1] *Id.* ¶¶ 4, 15. Kin Shum and Jan Nilsson are former employees of Advanced Analogic Technologies, Inc. (AATI), which Skyworks acquired in 2012. *Id.* ¶¶ 12, 21,

---

[1] Kinetic Technologies Inc. (Kinetic USA) is one of several Kinetic entities. Docket No. 60-1, Ex. I at 1. Kinetic Technologies Cayman Island (Kinetic CAY) holds all intellectual property and serves as the ultimate holding company. *Id*. Kinetic USA develops intellectual property for Kinetic CAY. Kinetic Technologies in the British Virgin Islands (Kinetic BVI) licenses intellectual property from Kinetic CAY, produces inventory by outsourcing manufactures to subcontractors, and sells to Kinetic Technologies Hong Kong Limited as sole distributor. *Id*. Kinetic Technologies Hong Kong Limited (Kinetic HK) buys inventory from Kinetic BVI and sells to outside customers. *Id*.

24. Shum and Nilsson are now officers, directors, employees, and/or founders of Kinetic USA. *Id*. ¶¶ 20, 23.

The patents at issue in this case are Patent Nos. 7,921,320 (the '320 patent) and 8,539,275 (the '275 patent). During his employment at AATI, Nilsson was named as an inventor of the '320 and '275 patents. *Id*. ¶ 25. The '320 patent was issued on April 5, 2011. It was initially assigned from the employee inventors to AATI, which was acquired by Skyworks in 2012. *Id*. ¶¶ 10, 12. The '275 patent was issued on September 17, 2013, and is assigned to Skyworks. *Id*. ¶¶ 11, 13. At this time, Skyworks is the owner by assignment of all right, title, and interest in the '320 and '275 patents. *Id*. ¶ 14.

Skyworks alleges that Kinetic USA made, used, offered to sell, sold, and/or imported into the United States and placed into the stream of commerce LED driver products that infringe at least one claim of the '320 and '275 patents, in violation of 35 U.S.C. § 271. *Id*. ¶ 33, 44. The specific driver products at issue in this case include those marketed and sold as part numbers KTD101, KTD102, KTD253, KTD 259, and KTD262. *Id*. ¶ 33.

In March, 2013, Skyworks filed a complaint for infringement of the '320 patent against Kinetic USA and Kinetic Hong Kong in the United States District Court for the District of Massachusetts. *Skyworks Solutions, Inc. v. Kinetic Techs., Inc.*, Case No. 1:13-cv-10655-GAO (D. Mass. 2013). The case against Kinetic USA was dismissed for lack of jurisdiction on December 30, 2013. The present suit was filed in this district three days later, on January 2, 2014. Docket No. 1. Kinetic USA filed a motion to dismiss on February 17, 2014, which this Court denied. Docket Nos. 25, 29.

Kinetic USA now moves for summary judgment on Skyworks' claims of direct patent infringement and indirect patent infringement. Docket No. 51.

## LEGAL STANDARD

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2

1  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

Kinetic USA moves for summary judgment on Skyworks' claims of direct and indirect patent infringement, arguing that it does not make, use, sell, or offer to sell any accused product within the United States, nor does it import any accused product into the United States. Motion at 4; Reply at 2, 7. Skyworks maintains that material disputed facts exist as to whether Kinetic USA uses and offers the accused products for sale within the United States. Opp. at 6.

3

## I.  Direct Infringement

Section 271(a) of the patent statute provides in relevant part that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). "It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005).

Kinetic USA maintains that it does not make, use, offer to sell, or sell accused products in the United States or import items containing the accused products into the United States. Motion at 5. Skyworks contends that material disputed facts exist as to whether Kinetic USA uses and offers the accused products for sale within the United States. Opp. at 6.

### A.  Offers for Sale

Skyworks asserts that Kinetic USA has offered its products for sale in the United States. Opp. at 7. "[T]he location of the contemplated sale controls whether there is an offer to sell *within the United States*." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371, 1381 (Fed. Cir. 2014) (quoting *Transocean*, 617 F.3d at 1309). "In order for an offer to sell to constitute infringement, the offer must be to sell a patented invention within the United States." *Id*. "An offer to sell is a distinct act of infringement separate from an actual sale. An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1308 (Fed. Cir. 2010).

Skyworks argues that Kinetic USA has engaged in sales activities with specific United States companies. Opp. at 8. First, Skyworks asserts that Kinetic USA approached Gtron — a company with offices in California and Korea — to distribute its products. *Id*. According to Skyworks, Kinetic USA may have met with Gtron in California and may have provided product samples to Gtron. *Id*. at 8-9. Skyworks cites the deposition testimony of Erik Ogren, Director of Marketing for Kinetic USA:

*Q: Have you ever had any meetings with any employees or officers of Gtron Inc.?*

4

> A: Yes.
> Q: Where were those meetings?
> A: In Korea.
> Q: Any meetings in your officers?
> A: I don't recall.
> Q: Is it possible?
> A: It's possible.
> Q: Any meetings in their offices in California?
> A: I don't recall.
> Q: Is it possible?
> A: It's possible.
> Q: Do you know whether any officers or employees of Gtron have ever been in Kinetic's offices in California?
> A: I—I don't know.
> Q: Is it possible?
> A: It's possible.

Ex. B at 74-75.

Additionally, Skyworks cites the deposition testimony of Kin Shum, CEO of Kinetic Technologies Cayman and CEO of Kinetic USA:

> Q: What does Gtron do?
> A: It was one of our sales rep in Korea.
> Q: Okay. And did Gtron distribute products for Kinetic Technologies?
> A: It probably wanted to.
> Q: Did it ever?
> A: I don't think so.
> Q: Okay. When you say it was one of your sales reps, what does that mean?
> A: It help us find customers, promote our products in Korea, and take commission from it . . . .
> Q: Where did you meet them?
> A: I think in both Korea and the U.S.

Ex. D at 48-49.

Although Skyworks directs the Court to these portions of the deposition testimony of Ogren and Shum, this testimony does not support Skyworks' contention that Kinetic USA offered accused products for sale in the United States. "[T]he location of the contemplated sale controls whether there is an offer to sell *within the United States." Halo*, 769 F.3d at 1381 (quoting *Transocean*, 617 F.3d at 1309). Thus, to constitute direct infringement, the location of the contemplated sale of accused Kinetic USA products must have been within the United States. Gtron functioned as a distribution channel and "as a representative (stocking rep) in Korea," not in the United States. Ex. M at 43; Ex. E at 2. Skyworks has not provided evidence of Kinetic USA offering to sell any

1 accused product to Gtron, nor has it pointed to evidence of any contemplated sale within the
2 United States rather than in Asia. Therefore, Skyworks has not shown that Kinetic USA offered
3 accused products for sale within the United States.

4 Skyworks also contends that Kinetic USA offered accused parts for sale during meetings
5 with Qualcomm in San Diego, California. Opp. at 9; Supp. Brief at 24. Specifically, Skyworks
6 contends that Kinetic USA made sales presentations in San Diego during which the parties
7 discussed Kinetic USA's driver products. *Id*. Skyworks further alleges that Kinetic USA
8 provided price quotes and was successful in getting its driver products included in reference
9 designs for cell phones by late 2011. *Id*. In support of its position, Skyworks cites the deposition
10 testimony of Erik Ogren:

> *Q: Have you ever been involved in any presentations made to Qualcomm?*
> A: Yes.
> *Q: Have you ever tried to—have you ever discussed LED drivers in the context of any of those presentations?*
> A: Yes.
> *Q: Were those presentations in Qualcomm's offices in San Diego?*
> A: Yes.
> *Q: Do you know if any of the products accused in this litigation were discussed during any of those meetings?*
> A: Not that I'm aware of.
> *Q: Is it possible?*
> A: I don't believe so.
> *Q: Are you certain?*
> A: No.
> *Q: Okay. So is there a remote possibility that they were discussed?*
> A: I don't believe there's a remote possibility, no.

Docket No. 60-1, Ex. B at 127-28.

Although Skyworks cites this deposition testimony as evidence of an offer for sale, this testimony fails to establish that Kinetic USA discussed or provided price quotations for any accused products in the United States. *Id*.; 212. Skyworks also contends that the inclusion of Kinetic components in reference designs for Qualcomm constitutes an offer for sale pursuant to section 271(a). In his deposition testimony, Ogren addressed questions about the reference designs:

> *Q: So was there a reference design for Qualcomm that had a Kinetic product in it?*
> A: Yes. . . .
> *Q: Do you know where the reference design for Qualcomm came from?*

6

> A: It came from QRD in China.
> Q: And what does QRD in China do?
> A: Qualcomm reference designs. They produce reference designs for Qualcomm.
> Q: Okay. And does QRD provide those reference designs to Qualcomm?
> A: QRD is Qualcomm.
> Q: QRD is Qualcomm. But it's based in China.
> A: That's correct . . . .
> Q: Do you know whether QRD in China has the capability of making a decision as to what products it will incorporate into Qualcomm products?
> A: Yes.
> Q: Okay. So the reference designs from Qualcomm came from QRD. Correct?
> A: Yes.
> Q: Okay. Did you provide—strike that. Did Kinetic Technologies provide integrated circuits to be used in the reference design for QRD for the purpose of selling products to QRD?
> A: No.

Docket No. 60-1, Ex. B at 207-09.

Skyworks also cites the deposition testimony of Jan Nilsson, CEO:

> Q: Okay. And so do you know whether Kinetic Technologies ever tried to partner with [the company] on these reference designs?
> A. Yes.
> Q: And do you know whether Kinetic Technologies has provided components to be included in the reference designs to Qualcomm?
> A: I think so, yes. Again, this is not my first line of duties, but I think so, yes.
> Q: Do you know whether those samples were sent to Qualcomm's headquarters in San Diego?
> A: No . . . No, I know they are—all this work has been taking place in Shanghai or—sorry—China. I don't know exactly where in China, but they have some or probably a number of different groups in China doing this type of work.

Docket No. 60-1, Ex. C at 158-59.

The evidence Skyworks cites does not establish that an accused Kinetic product was offered for sale within the United States, nor that an accused product was included in the reference designs for Qualcomm. This testimony states that the reference designs were created in China.

Thus Skyworks has failed to present evidence that the contemplated location of any sale of an accused product was within the United States. Skyworks has failed to meet its burden to show that Kinetic USA directly infringed by offering an infringing product for sale within the United States, and the Court must GRANT Kinetic USA's motion as to this issue.

7

**B.     Use of Any Patented Invention Within the United States**

Kinetic USA argues that Skyworks has failed to present admissible evidence that Kinetic USA uses an accused product in the United States. Reply at 5; Supplemental Brief, Docket No. 88 at 17. Skyworks argues that Kinetic USA uses accused parts in the United States by testing its products at its Sunnyvale, California facility. Opp. at 6-7. Specifically, Skyworks maintains that Kinetic USA engages in "verification" and "product qualification" testing on all of its products and provides technical support for products containing Kinetic parts. *Id*. at 7; Supplemental Brief, Docket No. 80 at 19-23. Testing is a use of an invention that may infringe under § 271(a). *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (citing *Roche Prods. v. Bolar Pharm. Co.*, 733 F.2d 858, 863 (Fed Cir. 1984)). "Nevertheless, the infringer must use the 'patented invention.'" *Id*. (quoting 35 U.S.C. § 271(a)).

Skyworks contends that the accused products were developed and verified by Kinetic USA in its Sunnyvale, California facility prior to 2012. Opp. at 7; Docket No 80 at 20. To constitute infringing activity, Kinetic USA must have used an accused product in the United States, after the '320 patent was issued on April 5, 2011 or the '275 patent was issued on September 17, 2013.

Skyworks maintains that Kinetic USA tested accused parts after the '320 patent was issued, and points to documents it describes as Kinetic USA's test reports. Supplemental Reply at 13; Supp. Exs. KK, QQ. Kinetic USA does not dispute that Supplemental Exhibit KK is a test report for the KTD253 dated April 28, 2011, but it asserts that the tests were done in China. Kinetic USA has submitted the declaration of Lu Chen which states that Skyworks failed to include the e-mail cover page for this exhibit and that the cover page shows that the exhibit was one tab from a spreadsheet that contains results for tests performed on the KTD253 by Hana JX, a packaging-test house in Jiaxing, China. Docket No. 89-5 ¶ 13; Supp. Ex. KK+Cover.

Skyworks further argues that Kinetic USA prepared a test plan for the accused KTD262 in September 2011 and discussed testing the KTD259 and KTD259B in April 2011. Supp. Ex. LL, OO, II; Docket No. 82-4 at 21-22. According to Skyworks, the only facility Kinetic USA had before 2012 was the Sunnyvale R&D center, thus the accused KTD262 was "most likely" developed and tested at the Sunnyvale facility after the '320 patent issued. The header at the top of

8

Skyworks' Supplemental Exhibit LL states: "KTD262 Final Test Plan Rev. C (Sep. 2011)". Supp. Ex. LL. The declaration of Lu Chen, submitted by Kinetic USA, states that this exhibit is a final test plan that describes tests to be performed in product for the KTD262 but should have included an e-mail from Mark Chiang, a field applications engineer in the Kinetic Hong Kong's Taiwan office. Docket No. 89-5 ¶ 13. The e-mails submitted as Kinetic USA's Supplemental Exhibit LL+Cover appear to be transmissions between Lu Chen in the Sunnyvale office and Mark Chiang in Taiwan, wherein Mark Chiang in Taiwan was to do the testing. Supp. Ex. LL+ Cover.

Skyworks next argues that Kinetic USA tested accused parts KTD259 and KTD259B after the '320 patent issued and cites Supplemental Exhibit QQ, a test page for KTD 259B dated June 17, 2011. Kinetic USA does not dispute that this exhibit is a test page for the KTD 259B, but the declaration of Lu Chen states that the e-mail cover page for this test page shows that it was one tab from a spreadsheet of KTD239 test results performed by Hana JX, a packaging-test house in Jiaxing, China. Docket No. 89-5 ¶ 13. Additionally, Kinetic USA points to Lu Chen's declaration to establish Supplemental Exhibit OO is an e-mail chain dated April 9, 2011, in which Chen suggested that Mark Chiang, a field application engineer in Taiwan, test the KTD259 in Taiwan to acquire a baseline for further testing on the non-accused KTD313. Docket No. 89-5 ¶ 14. Chen's declaration states that the testing that he performed, as reflected in the e-mail chain, was on the non-accused KTD313 in Sunnyvale and testing on the KTD259 was only done in Taiwan. *Id*. ¶ 15.

Skyworks complains that it was not granted access to Kinetic USA's e-mails during a one-day onsite inspection at Kinetic USA's Sunnyvale facility, and that these cover e-mails were not produced to Skyworks during discovery. Supp. Reply Brief at 16; Docket No. 103, Ex. 1. However, Skyworks does not respond to the supplemental declaration of Lu Chen and the cover e-mails by offering contradictory evidence. Rather, Skyworks argues that the e-mails are imprecise and fail to explicitly state that the testing discussed therein was to take place in China or Taiwan. Supp. Reply Brief at 17. However, the only fair inference from these cover sheet e-mails is that an engineer in Taiwan, when instructed to test the KTD262, conducted that test in Taiwan. It appears from the documentation that test documents sent by employees of Kinetic Hong Kong's Taiwan

9

office to an employee of Kinetic USA pertained to tests completed by Kinetic's Asian entities, not by Kinetic USA.[2]  *See* Docket No. 89-5 at 4; Supp. Exs. KK, LL, QQ.

Skyworks has failed to present a genuine issue of material fact; thus, the Court GRANTS summary judgment as to the issue of direct infringement.

## II.     Indirect Infringement

Skyworks contends that Kinetic USA is liable for induced and contributory infringement pursuant to 25 U.S.C. section 271(b) and (c).  Kinetic USA moves for summary judgment on both of these claims.

### A.     Induced Infringement

Under Section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *MEMC*, 420 F.3d at 1378 (quoting *Minn. Mining & Mfg. Co, v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (internal quotation marks omitted).

#### 1.     Direct Infringement

In its supplemental brief, Skyworks clarifies the acts of third-party infringement that it contends give rise to its claim of induced infringement against Kinetic USA.  Skyworks asserts that Samsung has directly infringed Skyworks' patents, because Samsung devices incorporating Kinetic's accused parts were sold, offered for sale, and imported into the United States after the issuance of the '320 patent April 5, 2011.  Supp. Brief at 7-8.

Skyworks points to four categories of evidence on which it bases its argument.  The Court

---

[2] Skyworks also argues that the supplemental declaration of Lu Chen is contradictory to the previously submitted declarations and deposition testimony.  However, the deposition testimony on which Skyworks relies does not constitute "conflicting testimony" as Skyworks claims it does; Skyworks' belief that the supplemental declaration shows "deception" by Chen is unsupported.

10

agrees that two of these categories are sufficient to present a triable issue as to Samsung's direct infringement of the asserted patents.

First, Skyworks cites the declaration of Howard Boyle, CEO of Texas IP Labs LLC.[3] Docket No. 24, Ex. BB. According to Skyworks, Boyle's declaration is evidence that the accused part KTD253 was sold by Samsung in the United States after the issuance of the '320 patent. Boyle's declaration states that in March 2013 he received a parcel from Kim & Chang, a law firm in Seoul, Korea, which contained product samples of the KTD102, KTD253, KTD259, and KTD262. *Id.* ¶¶ 3, 5. Boyle examined the semiconductor inside each of the product samples. *Id.* ¶ 6. Also in March, 2013, Boyle received four Samsung SGH-I827 cellular telephones "purchased in either Cambridge or Boston, Massachusetts." *Id.* ¶ 9. After examining the internal electronic components of the phones, Boyle concluded all four Samsung phones contained the KTD253 part.[4] *Id.* ¶ 10. The Court finds that this is evidence that Samsung phones sold in the United States after the '320 patent issued contained accused products.

Next, Skyworks cites Kinetic USA's sales documents which, Skyworks claims, establish that accused products were incorporated into Samsung cell phones for the U.S. market. Supp. Brief at 7. Skyworks contends a spreadsheet titled "Samsung HHP Product Status" tracked the accused Kinetic parts KTD262 and KTD253 which were used in Samsung models SGH-I437 and SPH-M830, respectively, and sold in the United States after the production dates of October and June, 2012.[5] Supp. Ex. R, TT, ZZ. Supplemental Exhibits TT and ZZ are printouts from internet websites that sold Samsung models SGH-I437 and SPH-M830 in the United States in 2014. Supp.

---

[3] This declaration was submitted by Skyworks in the case against Kinetic filed in the United States District Court for the District of Massachusetts: *Skyworks Solutions, Inc. v. Kinetic Techs., Inc.*, Case No. 1:13-cv-10655-GAO (D. Mass. 2013). Skyworks submitted this declaration in support of its opposition to Kinetic USA's motion to dismiss the complaint for lack of jurisdiction. The District Court of Massachusetts granted Kinetic USA's motion to dismiss on December 30, 2013.

[4] Boyle's declaration states that the die identification code for the semiconductor product found in the Samsung phones corresponded to the die identification code for the Kinetic KTD253 that was sent to him by Kim & Chang. Ex. BB. ¶ 12.

[5] The spreadsheet, introduced at the deposition of Erik Ogden, was identified as a list of Samsung project names prepared by the sales department of the Kinetic Korea sales team. Docket No. 60-1, Ex. B at 148-49.

11

Ex. TT; Supp. Ex. ZZ at 3, 5. This evidence is sufficient to establish a triable issue as to whether there was direct infringement by Samsung.

Skyworks's last two arguments are less convincing. Skyworks refers the Court to page 21 of Supplemental Exhibit P. This exhibit was introduced at the deposition of Erik Ogren and identified as a company presentation. Docket No. 60-1, Ex. B at 148-49. Page 21 lists accused part KTD259, and 38 Samsung model numbers, including numbers BCH-R390, BCH-R640, BGH-T499, and BGH-T379. Supp. Ex. P at 21. Skyworks claims this exhibit demonstrates that the accused KTD259 part was included in Samsung phones BCH-R390, BCH-R640, BGH-T499, and BGH-T379. Supp. Ex. P at 21; Supp. Brief at 8. Skyworks cites Supplemental Exhibits WW and ZZ as evidence that these Samsung phone models were sold in the United States in 2014. However, the model numbers for the Samsung phones in Supplemental Exhibit WW are SCH-R380, SGH-T499, SGH-T379, and SCH-R640. Supp. Exs. WW, ZZ. Skyworks claims, without citation, that "Samsung's U.S. cell phones model numbers are typically prefixed with an 'S'" and thus the model numbers BCH-R380, BCH-R640, BCH-T499, and BCH-T379 "were commercialized in the U.S. as model numbers SCH-R380, SCH-R640, SGH-T499, SGH-T379." Supp. Brief at 8. At the deposition of Erik Ogren, Skyworks asked whether he knew if Samsung model SGH-i827 is sold in the United States. Docket No. 60-1, Ex. B at 189. Ogren replied that he did not know and did not know whether anyone at Kinetic Technologies would know if Samsung model SGH-i827 is sold in the United States. *Id*. Skyworks has not directed the Court to evidence establishing that the phone models BCH-R390, BCH-R640, BGH-T499, and BGH-T379 listed in the Kinetic company report are sold in the U.S. as model numbers SCH-R380, SCH-R640, SGH-T499, SGH-T379 and thus are evidence of direct infringement by Samsung in the United States.

Skyworks also argues that Kinetic USA told its investors in January 2012 that the KTD26x family had become the mainstream solution for the Samsung GalaxyTab and that these parts would be an important source of revenue in 2012. Supp. Brief at 8; Docket No. 60-1, Ex. Q. However, the "KTD26x" family (KTD265, KTD267, and KTD268) are not properly accused parts and therefore cannot support a claim of induced infringement.

12

On balance, however, viewing the evidence in the light most favorable to Skyworks, as it must, the Court finds that Skyworks has presented evidence sufficient to support its claim of direct infringement by a third party.

### 2. Knowledge and Specific Intent

In addition to proving direct infringement, Skyworks must also show Kinetic USA's knowledge and intent to induce such infringement. "[M]ere knowledge of possible infringement by others does not amount to inducement; [rather,] specific intent and action to induce infringement must be proven." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003). Induced infringement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011). The knowledge requirement may be satisfied by showing actual knowledge or willful blindness. *Id.* at 2072.

Viewing the evidence in the light most favorable to Skyworks, the Court finds that although Skyworks has presented sufficient evidence from which a jury could infer that Kinetic USA possessed the requisite knowledge of the patent to support infringement, it has not presented evidence demonstrating a triable issue of fact concerning Kinetic USA's intent to induce infringement.

Knowledge: Kinetic USA argues that it did not have knowledge of the patents-in-suit. However, .Kinetic's Chairman, Jan Nilsson, is named as an inventor both on the two patents asserted in this action and on their parent patent. Further, litigation filed in March, 2013 by Skyworks against Kinetic in Massachusetts federal court asserted infringement of these same two patents. Kinetic argues that Skyworks' purported evidence of Nilsson's pre-suit knowledge is based on speculative deposition testimony, and any knowledge of the patents from the prior Massachusetts litigation cannot constitute "pre-suit knowledge." Reply at 10; Supp. Brief at 33. However, Courts in the Northern District of California have held that knowledge of a patent based on the filing of a complaint is sufficient to meet the knowledge requirement for an induced infringement claim. *Bascom Research LLC v. Facebook, Inc.*, No. C 12-6293 SI, 2013 WL

968210 at *4 (N.D. Cal. Mar. 12, 2013); *see also Infineon Techs. AG V. Volterra Semiconductor Corp.*, No. C-11-6239 MMC, 2012 WL 3939353, at *4 (N.D. Cal. Sept. 10, 2012). Accordingly, Skyworks has shown Kinetic USA's actual knowledge of the patents-in-suit from the filing of the complaint in the Massachusetts litigation. Docket No. 60-1, Ex. D at 39-40.

Intent to induce infringement: Skyworks maintains that Kinetic USA intended to induce infringement of the asserted patents because it prepared marketing materials for the accused parts, provided technical support for the accused parts and deliberately provided accused parts for phones it knew were sold in the United States. Supp. Brief at 14. "Evidence of active steps taken to encourage direct infringement, such as advertising infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *MEMC*, 420 F.3d at 1379 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

According to Skyworks, the creation of product datasheets for all products sold by Kinetic Hong Kong is evidence of Kinetic USA's intent to induce infringement. Supp. Brief at 15. Exs. CC- GG. However, Skyworks has not provided evidence that these datasheets induced Samsung or other customers to directly infringe by importing phones containing the accused parts into the United States or offering to sell phones containing accused parts to customers in the United States. *See MEMC*, 420 F.3d at 1379. The datasheets do not contain instructions to customers of how to use the accused products in an infringing manner and thus cannot support an inference of intent to induce infringement. *See Symantec Corp. v. Computer Assoc. Intern., Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008); *see also Metabolite Labs., Inc. v. Laboratory Corp. of America Holdings*, 379 F.3d 1354, 1365 (Fed. Cir. 2004).

Skyworks next argues that Kinetic USA's intent to induce infringement can be inferred from the technical support it provides its customers. Supp. Brief at 15. According to Skyworks, comments listed in an April 2011 monthly sales report shows Kinetic provided support for the KTD259. Supp. Brief at 16. Skyworks also cites e-mail correspondence between Lu Chen and Mark Chiang. *Id*. Skyworks contends that these exhibits are evidence that Kinetic USA provided technical support to its customers by testing accused parts in Sunnyvale after the '320 patent

14

issued.  However, Skyworks has failed to provide any evidence that this testing was a form of "technical support" provided to Samsung that induced infringement.  The monthly sales report includes no information that suggests Kinetic USA conducted testing on the KTD259 as technical support offered to induce Samsung to infringe the asserted patents.[6]  Ex. II.  Similarly, the e-mail correspondence between Lu Chen and Mark Chiang does not suggest that Kinetic USA provided technical support to induce Samsung to infringe.  Kinetic USA has provided the declaration of Lu Chen which explained that the cited e-mails are instructions from Chen in Sunnyvale directing Chiang in Taiwan to test the KTD259B in a latchup test to determine the cause of the "BJBDA failure in Samsung" and information provided by Chen to Chiang regarding a test Chen conducted in Sunnyvale on the KTD313—not an accused part in this case.  Supp. Ex. OO; Chen declaration ¶ 14.  Skyworks cites *MEMC* in support of its position.  The e-mails at issue in *MEMC* demonstrated that the defendant worked with the third-party infringer to "coordinate shipment dates and the quantity of [products] sent in each shipment," and that the defendant sent a shipment to the third-party infringer "in order to address technical problems with previously-supplied." *Id*. at 1379.  Further, in *MEMC* there was evidence that the defendant's personnel "made several on-site visits" to the third-party infringer during which technical presentations on the products were made.  *Id*.  Here, in contrast, Skyworks has not shown any evidence of substantial e-mail correspondence coordinating shipments, providing replacement parts or any on-site visits provided by Kinetic USA's personnel.  Thus, Skyworks has not shown that this testing in Taiwan by an employee of Kinetic Hong Kong's Taiwan office was technical support provided by Kinetic USA that enabled Samsung to purchase and use the KTD259B in an infringing manner.

Finally, Skyworks contends that Kinetic USA worked extensively with Samsung to incorporate infringing parts into phones designed by Samsung's U.S. design group for the U.S. Market.  Supp. Brief at 16-17; Supp. Reply Brief at 5.  Skyworks cites portions of the Shum declaration in which he describes the "design-in" process and a sales spreadsheet titled "Samsung

---

[6] The comment to which Skyworks cites refers to "Longcheer" as the end customer.  Skyworks provided no evidence or argument regarding direct infringement by Longcheer in its induced infringement claim.  *See* Suppl. Brief at 6-8; Supp. Reply Brief at 4-5.

15

HHP Product Status." Docket No. 66-3; Supp. Ex. R.[7] Skyworks contends that the sales spreadsheet shows that Kinetic USA engaged in the design-in process with Samsung. Supp. Reply Brief at 10-11. However, the sales spreadsheet, which was an exhibit presented to Erik Ogren during his deposition, was identified not as part of any design-in process but as a list of Samsung project names prepared by the sales department of the Kinetic Korea-based sales team. Ogren Depo., Ex. B at 188-89. Further, other exhibits, which were identified as reflecting the "design-in" process, look nothing like the sales spreadsheet and are titled "Monthly Design-In Report" and "Sample Design-In Form." Docket No. 60-1, Exs. U, X. This sales spreadsheet exhibit, upon which Skyworks relies, does not appear to be a design-in report or design-in plan and was only identified in the record as a list of project names. The evidence that Skyworks cites fails to support even an inference that Kinetic USA worked for months with Samsung's U.S. design groups to incorporate its infringing parts into Samsung phones designed specifically for the U.S. market.

The Court finds that Skyworks has not presented sufficient evidence from which a jury could infer that Kinetic USA possessed the requisite specific intent to induce infringement. Accordingly, the Court must GRANT summary judgment to Kinetic USA as to this claim.

### B.     Contributory Infringement

Under 35 U.S.C. § 271(c), a party is liable for contributory infringement if he or she "offers to sell or sells within the United States or imports into the United States" a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c); *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). Skyworks argues that Kinetic USA has offered to sell and sold accused products in the United States, but, as previously discussed, Skyworks has failed to

---

[7] Supplemental Exhibit R is an enlarged version of Exhibit R which was submitted in support of Skyworks' Opposition to Kinetic USA's motion for summary judgment.

establish that an accused Kinetic product was offered for sale or sold within the United States. Accordingly, the Court must GRANT Kinetic USA's motion as to Skyworks' claim of contributory infringement.[8]

## CONCLUSION

For the stated reasons, the Court GRANTS Kinetic USA's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 2, 2015

SUSAN ILLSTON
United States District Judge

---

[8] In its opposition, Skyworks for the first time raises the theory that Kinetic's overseas entities are the alter ego of Kinetic USA and thus Kinetic USA is liable for the infringing acts of its related overseas entities. Opp. at 20-21. According to Skyworks, disputed issues remain as to whether the Kinetic group entities are alter egos of Kinetic USA, and so Kinetic USA's motion for summary judgment must be denied. *Id*. at 21. Skyworks asserts that by undercapitalizing Kinetic USA, the Kinetic family of companies is plainly attempting to operate in the U.S. exclusively thorough a judgment-proof entity. Supp. Reply Brief at 3. The Court has discretion to refuse to allow a new theory in opposition to summary judgment. *Brass v. County of Los Angeles*, 328 F.3d 1192, 1197 (9th Cir. 2003); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000). Nothing in Skyworks' complaint suggests it intended to raise an alter ego theory and Skyworks has offered no excuse or justification for its failure to raise this theory earlier. *See Brass*, 328 F.3d at 1197. Skyworks cannot rely on this new theory in opposition to Kinetic USA's summary judgment motion.